In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1824

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARIO PRADO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cr-00607-1 — **Sharon Johnson Coleman**, *Judge.*

ARGUED JANUARY 14, 2022 — DECIDED JULY 29, 2022

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* On July 25, 2019, Mario Prado was
charged by a superseding indictment with unlawful posses-
sion of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1),
and possession with intent to distribute a controlled sub-
stance, in violation of 21 U.S.C. § 841(a)(1). The indictment fol-
lowed a state search warrant of Prado's home, in which, as
relevant here, the officers recovered nine firearms, including
five that were stolen, one with an obliterated serial number,

and one with no serial number. Prado pled guilty to Count One, possession of a firearm as a felon in violation of § 922(g)(1), pursuant to a written plea agreement in which he retained his right to appeal his sentence.

## I.

In determining the appropriate sentence, the district court calculated the initial base offense level as 20, which was lower than the base offense level of 22 recommended by the Probation Office in the Presentence Investigation Report (PSR) because, as the parties agreed, Prado's prior conviction for mob action by force was not a crime of violence. The district court then proceeded to consider enhancements, applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(1)(B) because the offense involved between 8 and 24 firearms. The court added a two-level enhancement pursuant to subsection (A) of U.S.S.G. § 2K2.1(b)(4) because Prado possessed a stolen firearm and a four-level enhancement under subsection (B) of that provision because Prado possessed a firearm with an obliterated serial number. The PSR had recommended the four-level enhancement for the obliterated serial number, but had omitted the two-level enhancement for possession of a stolen firearm, reasoning that § 2K2.1(b)(4) allowed application of only one of the enhancements in its subsections—either for a stolen firearm or an enhancement for an obliterated serial number—but not both. As we will discuss, Prado challenges that double enhancement by the district court in this appeal, arguing that the PSR, not the district court, properly interpreted the language of § 2K2.1(b)(4). With those enhancements, the offense level was therefore 30. A "hanging paragraph" in § 2K2.1(b) provided that the cumulative offense level from the

application of § 2K2.1(b)(1)–(4) may not exceed 29, and therefore the impact of those enhancements on the offense level reverted to 29.

Following the imposition of those enhancements, the district court applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because the defendant used or possessed the firearms in connection with another felony offense, and deducted three levels for Prado's acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), yielding a total offense level of 30. Although the PSR had determined that Prado was in criminal history category V, the court held that criminal history category IV was the correct category. That yielded a guideline range of 135 to 168 months, but the statutory maximum for the offense was below that range, at 120 months. After analyzing the relevant factors under 18 U.S.C. § 3553(a) and the arguments in mitigation, the court imposed a below-guideline sentence of 108 months' imprisonment. Prado now appeals that sentence.

## II.

Prado initially argued that the district court failed to properly calculate his guideline range, raising two challenges to the calculation. First, he maintained that the district court erred in determining that his offense level was 30, arguing that the hanging paragraph in U.S.S.G. § 2K2.1(b) caps a defendant's offense level at 29. Following the government's response, however, Prado conceded that the court's calculation of the offense level did not run afoul of the cap in the hanging paragraph of § 2K2.1(b), and therefore we need not address that challenge.

His remaining challenge is that the court erred in impos-
ing both a two-level enhancement because a firearm was sto-
len and a four-level enhancement because the serial number
on a firearm was altered or obliterated. We review a challenge
to the court's calculation of the guideline's range *de novo*.
*United States v. Griffith*, 913 F.3d 683, 687 (7th Cir. 2019).

Section 2K2.1(b)(4) provides:

> **(b)** Specific Offense Characteristics
>
> > **(4)** If any firearm (A) was stolen, increase
> > by 2 levels; or (B) had an altered or oblit-
> > erated serial number, increase by 4 lev-
> > els.

Prado asserts that § 2K2.1(b)(4) allows only the application
of one of those two enhancements. Although the government
asserts that the enhancements address distinct attributes of
gun ownership, that does not advance its arguments. Posses-
sion of a stolen weapon is indeed distinct from possession of
a weapon with an obliterated serial number, although the two
may overlap at times, but the question here is not whether the
Sentencing Commission *could* impose both enhancements,
but whether it did so in § 2K2.1(b)(4).[1]

---

[1] The government cites to two circuit cases, *United States v. Salinas*, 462
F. App'x. 635, 637 (7th Cir. 2012) and *United States v. Perez*, 276 F. App'x.
512, 513 (7th Cir. 2008), in which our court purportedly "has treated
§ 2K2.1(b)(4) as permitting the application of both enhancements concur-
rently." Govt. Brief at 12. That argument is problematic. Both cited cases
are unpublished orders of this court, which by our rules are treated as non-
precedential and should not be argued for their precedential effect, *see*
Seventh Circuit Rule 32.1; but even absent that issue, those cases involved
only challenges to the factual basis for the enhancement and no challenge
was made to the imposition of both enhancements in those cases, nor was

That question is answered by the plain language of the provision. Subsection (b)(4) provides for a two-level increase if any firearm was stolen *or* a four-level increase if any firearm had an altered or obliterated serial number. The government's reading would substitute "and" in place of the "or" in that provision, allowing for the two-level stolen firearm enhancement *and* the four-level obliterated serial number enhancement. But the Commission did not employ the word "and," or any equivalent language such as "and/or."

Moreover, the history of § 2K2.1(b)(4) makes clear that only one enhancement was envisioned. That is clear in the language preceding this version, as set forth in the 2006 Amendment which provided:

> Section 2K2.1(b) is amended by striking subdivision (4), which formerly read:
>
>> **"(4)** If any firearm was stolen, or had an altered or obliterated serial number, increase by 2 levels."
>
> and inserting the following:
>
>> **"(4)** If any firearm (A) was stolen, increase by 2 levels; or (B) had an altered or obliterated serial number, increase by 4 levels."

As that 2006 Amendment reveals, the previous version of § 2K2.1(b) quite clearly allowed for only one, two-level, enhancement if a firearm was stolen or had an altered serial number. Nothing in that language allowed for the possibility

---

any such issue decided or even identified in the decisions. Those cases are therefore inapposite.

of double-counting the enhancement if both situations were present. There is no ambiguity in that provision.

The 2006 Amendment did not purport to change that, and in fact continued to use the "or" connector rather than "and." The only apparent change in that amendment was to increase the enhancement to four levels if the serial number provision applied. The "Reasons for Amendment" in that Application Note history makes clear that the purpose of the amendment was to allow for the higher enhancement if obliteration of a serial number was involved, stating in full:

> *Reason for Amendment: …*
>
> Third, the amendment modifies § 2K2.1(b)(4) to increase penalties for offenses involving altered or obliterated serial numbers. Prior to this amendment, § 2K2.1(b)(4) provided a 2-level enhancement if the offense involved either a stolen firearm or a firearm with an altered or obliterated serial number. The amendment provides a 4-level enhancement for offenses involving altered or obliterated serial numbers. This increase reflects both the difficulty in tracing firearms with altered or obliterated serial numbers, and the increased market for these types of weapons.

That explanation makes clear that the amendment was meant to reflect the greater threat posed by obliterated serial numbers, thus allowing for a four-level increase under § 2K2.1(b)(4) rather than a two-level increase under that provision. Nothing in those "Reasons," however, purports to change § 2K2.1(b)(4) to allow the stacking of both the stolen

firearm enhancement and the obliterated serial number enhancement. That would have been a fundamental change in the provision, and the absence of any language in the explanation reflecting such an intent, in conjunction with the retention of the "or" connector, makes clear that no such change was intended or made. As with the pre-2006 version, the plain language of § 2K2.1(b)(4) is to allow either a two-level or four-level enhancement in cases involving a stolen firearm or a firearm with an altered or obliterated serial number.

Here, that means that the court could have imposed at most the four-level enhancement, and could not also stack the two-level stolen firearm enhancement as well. That alters the calculation of the total offense level. The proper calculation would begin with the 20 base offense level, add a four-level enhancement for the number of firearms and a four-level enhancement for the obliterated serial number firearm, thus totaling 28, and then adding the additional four-level enhancement for the use in connection with a felony offense followed by the three-level deduction for acceptance of responsibility, yielding a total offense level of 29. The new guideline range would be 121–151 months absent the operation of the statutory maximum.

## III.

Prado argues that a remand for resentencing is required because the guideline range of 121–151 months is less than the range calculated by the district court of 135–168 months, and the higher range had an "anchoring effect" which resulted in a higher sentence than the court would likely have reached if starting from a lower guideline range. See *United States v. Ruth*, 966 F.3d 642, 650–51 (7th Cir. 2020) (noting that a guideline range will anchor a court's discretion in choosing a

sentence, and that in most cases the guideline range will affect the sentence). The government counters that the error in the calculation of the guideline range was harmless and that no remand is necessary because the statutory maximum was lower than both of those initial ranges.

The government is correct. Prado's argument is premised on the notion that his guideline range was higher under the prior calculation and should be lower if properly assessed. But under both calculations, the applicable guideline range here is the 120-month statutory maximum. Section 5G1.1(a) provides that for sentencing on a single count of conviction, "[w]here a statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." That is what we have here—a statutorily authorized maximum sentence that is lower than the minimum of the guideline range—and that is true of both the range used by the district court and the one it should have used. In that situation, the guideline range is effectively reduced to the statutory maximum. *United States v. Fletcher*, 763 F.3d 711, 718 (7th Cir. 2014); *United States v. Boroczk*, 705 F.3d 616, 622 (7th Cir. 2013) (noting that under § 5G1.1(a) the guideline range defaults to the statutory maximum); *United States v. Kruger*, 839 F.3d 572, 580 (7th Cir. 2016) ("because the [Guidelines] range exceeded the statutory maximum term of 240 months, the statutory maximum became the Guidelines sentencing range"). In *Fletcher*, we addressed a similar situation, in which the lower ends of both the guideline range the district court used and the one for which the defendant argued were above the statutory maximum, and we held that "[b]ecause the court was constrained by the statutory maximum under either version of the guidelines, any error in calculating the range …

could not have affected the district court's choice of a sentence and thus any possible error was harmless." *Fletcher*, 763 F.3d at 718; *Kruger*, 839 F.3d at 580–81 (holding that any error in calculating the criminal history category could not have affected the sentence because under § 5G1.1(a) the advisory sentencing range would remain at the statutory maximum and "there is no likelihood that he would have received a different sentence absent the error"). Under § 5G1.1(a), the guideline range for the district court was the statutory maximum of 120 months under both the district court's calculations and the proper calculation for which Prado has argued, and therefore the error could not have affected the court's choice of sentence and the error in applying the § 2K2.1(b)(4) enhancement was harmless.

Accordingly, the decision of the district court is AFFIRMED.