In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1725

OTIS R. ELION,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:17-cv-01349 — **J. Phil Gilbert**, *Judge.*

ARGUED JANUARY 19, 2023 — DECIDED AUGUST 7, 2023

Before BRENNAN, SCUDDER, and KIRSCH, *Circuit Judges.*

BRENNAN, *Circuit Judge.* After Otis Elion pleaded guilty to distributing methamphetamine, a federal district court sentenced him as a career offender under U.S. Sentencing Guideline § 4B1.1. Elion's attorney did not challenge that designation, and the court imposed a 167-month prison term. Through a motion under 28 U.S.C. § 2255, Elion argues his attorney's failure to object amounts to ineffective assistance. The district court denied relief, concluding that Elion was

properly sentenced as a career offender and, therefore, did not suffer prejudice from counsel's performance. Though we commend the district court for its close and careful analysis, after our application of the categorical approach, we conclude that Elion does not qualify as a career offender. So, we reverse the denial of Elion's § 2255 motion and remand for an evaluation of counsel's performance.

**I**

**A**

In 2017, Elion pleaded guilty to three counts of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Because Elion had prior state and federal drug-related convictions, the United States Probation Office classified him as a career offender. *See* U.S.S.G. §§ 4B1.1(a), 4B1.2(b). That designation yielded a heightened Guidelines range, which the Probation Office identified as 151–188 months.[1] Elion's attorney did not challenge this enhancement, and the district court adopted the Presentence Investigation Report without modification.

Elion timely appealed his sentence, but his attorney moved to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). Elion voluntarily dismissed his consolidated direct appeals in September 2017. Then in December 2017, Elion filed a pro se motion in the district court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In his motion

---

[1] We agree with the parties that without the § 4B1.1 enhancement, Elion's criminal history category would have been V rather than VI, and his total offense level would have been 21 instead of 29. Per the 2016 Sentencing Table, which applied at the time, those metrics yield a Guidelines range of 70–87 months.

Elion argued that had trial counsel objected to the career of-
fender designation at sentencing, he would have received a
lower Guidelines range and a much-reduced sentence.

Under Guideline § 4B1.1(a), a federal defendant qualifies
as a career offender, and likely faces an elevated Guidelines
range, if:

> (1) the defendant was at least eighteen years old
> at the time the defendant committed the instant
> offense of conviction; (2) the instant offense of
> conviction is a felony that is either a crime of vi-
> olence or a controlled substance offense; and (3)
> the defendant has at least two prior felony con-
> victions of either a crime of violence or a con-
> trolled substance offense.

U.S.S.G. § 4B1.1(a). Elion was over 18 when convicted of the
2017 felony methamphetamine charges, so all agree he satis-
fies the first two requirements. Elion's arguments focus en-
tirely on the third requirement: whether he has at least two
prior convictions for controlled substance offenses.

A controlled substance offense under § 4B1.1(a) is:

> an offense under federal or state law, punisha-
> ble by imprisonment for a term exceeding one
> year, that prohibits the manufacture, import, ex-
> port, distribution, or dispensing of a controlled
> substance (or a counterfeit substance) or the
> possession of a controlled substance (or a coun-
> terfeit substance) with intent to manufacture,
> import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). The Presentence Investigation Report identified three of Elion's prior convictions as controlled substance offenses.

1. A 1999 Illinois conviction for unlawful delivery of a look-alike substance within 1,000 feet of public housing property, in violation of 720 ILL. COMP. STAT. 570/407(b)(3).

2. A 2000 Illinois conviction for unlawful delivery of a look-alike substance, in violation of 720 ILL. COMP. STAT. 570/404(b).

3. A 2006 federal conviction for distribution of a cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).[2]

Elion argues that neither the 1999 nor the 2000 Illinois conviction is a controlled substance offense, and he asserts constitutionally sufficient counsel would have recognized as much. Reviewing Elion's § 2255 motion, the district court concluded that Elion's 2006 federal conviction and at least his 2000 Illinois conviction qualify as controlled substance offenses. Those determinations meant Elion was properly sentenced as a career offender and could not prevail on his ineffective assistance claim. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring a showing of prejudice for

---

[2] Elion rightly points out that 1999, 2000, and 2006 refer to the years when the offenses occurred, not the dates of his convictions. But the parties and the district court used those dates, so we do as well. We also recognize that the Presentence Investigation Report inaccurately suggests that Elion's 2000 Illinois conviction was for a 720 ILL. COMP. STAT. 570/407 violation. As the parties now note, that conviction was for violating 720 ILL. COMP. STAT. 570/404(b).

ineffective assistance of counsel). Still, the district court granted Elion's certificate of appealability, and he timely appealed. We recruited counsel to act as amicus curiae and to make written and oral arguments on Elion's behalf.[3]

If we were considering Elion's sentencing arguments on direct review, the question for this court would be straightforward: Does Elion qualify as a career offender under Guideline § 4B1.1(a)? But Elion's case arrives by way of his § 2255 motion for ineffective assistance of counsel. Accordingly, we outline Elion's route to potential relief before examining the merits of his arguments.

In relevant part, 28 U.S.C. § 2255 authorizes a prisoner in federal custody to challenge his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Here, Elion claims a Sixth Amendment violation—he argues that he was denied effective assistance of counsel at sentencing. *See generally Strickland*, 466 U.S. at 685–86; *see also Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (explaining that *Strickland* applies to counsel's representation at sentencing). To prevail on this claim, Elion must satisfy two components. He "must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. Deficient performance turns on whether "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. He must also "show that the deficient performance prejudiced the defense." *Id.* at 687. To establish prejudice, "[Elion] must show that there is a reasonable probability

---

[3] The court thanks Aaron Z. Roper, Esq., and Claire R. Cahill, Esq., of Williams & Connolly LLP for serving as amicus curiae and providing exceptional assistance. For simplicity, we attribute all arguments to Elion.

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As the district court correctly recognized, Elion can show prejudice only if he should not have been sentenced as a career offender. So, we start by analyzing the applicability of Guideline § 4B1.1(a).

**B**

To determine whether Elion's previous Illinois convictions qualify as controlled substance offenses for Guideline § 4B1.1(a), we must apply the categorical approach. *United States v. Smith*, 921 F.3d 708, 712 (7th Cir. 2019); *see also Mathis v. United States*, 579 U.S. 500 (2016); *Shepard v. United States*, 544 U.S. 13 (2005); *Taylor v. United States*, 495 U.S. 575 (1990). The categorical approach is essentially a matching exercise: We look to see whether the Guidelines definition of controlled substance offense is broad enough to encompass the elements of Elion's statutes of conviction. *Smith*, 921 F.3d at 712; *United States v. Carter*, 961 F.3d 953, 956 (7th Cir. 2020). "If the elements of the crime of conviction are the same as, or narrower than, the elements of the" Guidelines offense, "the crime of conviction qualifies as a predicate offense." *Smith*, 921 F.3d at 712 (citation omitted). And, under this approach, we focus solely on the statute of conviction's elements, not the facts of the defendant's conduct. *Mathis*, 579 U.S. at 504.

The analysis is straightforward when the Guidelines offense is broad enough to include all the elements of the statute of conviction. *See id.* at 504–05. But the inquiry is more complex if one or more elements of the statute of conviction is broader than the elements of the Guidelines offense. *Id.* Then, we must determine whether the statute is "divisible." *Id.* at 505–06.

A statute is divisible if, rather than defining a single set of elements for a single crime, it defines multiple crimes by "list[ing] elements in the alternative." *Id.* at 505. When a statute is divisible, we can use the "modified categorical approach" and scrutinize certain record documents "to determine what crime, with what elements, [the] defendant was convicted of." *Id.* at 505–06; *Shepard*, 544 U.S. at 26. With the precise elements of conviction identified, we "can then compare that crime … with the relevant" Guidelines offense. *Mathis*, 579 U.S. at 506. If the elements of that crime fall within the coverage of that offense, then there is no mismatch, even if the same statute lists other offenses with broader elements. *Id.* at 505–06. By contrast, if a prior statute of conviction is both broader than the Guidelines offense *and* indivisible, then our work ends. Such a prior conviction cannot serve as a predicate offense even if the Guidelines offense covers the facts of the defendant's actual conduct. *See Bridges v. United States*, 991 F.3d 793, 800 (7th Cir. 2021) (citation omitted) ("The categorical method presumes that a conviction rests on the least serious acts that would satisfy the statute, regardless of the offender's actual conduct."); *Descamps v. United States*, 570 U.S. 254, 261, 265 (2013).

Using that framework, the district court compared 720 ILL. COMP. STAT. 570/404(b), the statute for Elion's 2000 conviction, to the Guidelines controlled substance offense. Though the court found that 720 ILL. COMP. STAT. 570/404(b) punishes conduct more broadly than the Guidelines offense, it concluded the Illinois statute is divisible. From there, the court used the modified categorical approach to determine that Elion's 2000 conviction was for "distribution" of a look-alike substance. The Guidelines controlled substance offense also covers

"distribution," so the court held that Elion was properly sentenced as a career offender.

We review the district court's denial of Elion's § 2255 motion de novo. *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017).

## II

## A

We begin by confirming the relationship between Elion's two Illinois convictions, a point on which the parties agree. As indicated, Elion has one conviction for violating 720 ILL. COMP. STAT. 570/404(b) in 2000 and one for violating 720 ILL. COMP. STAT. 570/407(b)(3) in 1999. For purposes of the categorical approach, however, we need only examine the fit between 720 ILL. COMP. STAT. 570/404(b)—which we refer to as the Illinois "look-alike statute"—and the Guidelines controlled substance offense. Elion's 1999 statute of conviction, 720 ILL. COMP. STAT. 570/407(b)(3), is just an enhancement statute—it elevates sanctions for offenders who commit enumerated offenses in certain locations. All agree the underlying offense for Elion's 1999 conviction was a violation of the look-alike statute near public housing. In essence, this means Elion was convicted of committing the look-alike statute's elements twice—once outright in 2000, and once in addition to a locational element in 1999. As the government acknowledges, this returns the focus of the categorical approach to the look-alike statute's elements. *See United States v. Lynn*, 851 F.3d 786, 796–97 (7th Cir. 2017); *United States v. Ruth*, 966 F.3d 642, 649–50 (7th Cir. 2020). If the look-alike statute criminalizes conduct more broadly than the Guidelines controlled substance

offense, and is not divisible, then neither of Elion's convictions count towards his career offender status.

**B**

We now use the categorical approach to examine the fit between the Illinois look-alike statute and Guideline § 4B1.1(a). The look-alike statute makes it "unlawful for any person knowingly to manufacture, distribute, advertise, or possess with intent to manufacture or distribute a *look-alike substance*." 720 ILL. COMP. STAT. 570/404(b) (emphasis added). By comparison, the Guidelines controlled substance offense covers, in relevant part, "the manufacture, import, export, distribution, or dispensing of a controlled substance (or a *counterfeit substance*)." U.S.S.G. § 4B1.2(b) (emphasis added). Like the district court, we start with whether the term look-alike substance in the Illinois statute has the same or narrower meaning as the term counterfeit substance in Guideline § 4B1.2(b). If the term look-alike substance encompasses a broader range of substances than the term counterfeit substance, then Elion's Illinois convictions cannot qualify as controlled substance offenses.

Elion believes the two terms have different meanings, arguing that counterfeit substance refers to a narrower set of substances. Specifically, he asserts that the plain meaning of counterfeit substance contains an intent component. Quoting *United States v. Hudson*, 618 F.3d 700, 703 (7th Cir. 2010), he says a counterfeit substance is a substance "(1) 'made in imitation of something else' (2) 'with intent to deceive.'" He then argues that Illinois's statutory definition for look-alike substance[4] contains no corresponding intent to deceive

---

[4] Look-alike substance is defined as:

component. So, the Guidelines' narrower, intent-focused meaning of counterfeit substance cannot match the broader meaning of look-alike substance. The district court partially agreed with Elion, concurring that the plain meaning of counterfeit substance includes an intent to deceive component. But the district court still found no categorical mismatch because, unlike Elion, it discerned an intent to deceive component in the look-alike substance definition.

For reasons explained below, we need not conclusively resolve this dispute.[5] Still, we recognize the ongoing debate in this area, so we make a few observations. Because the United States Sentencing Commission has not supplied a definition for counterfeit substance, we must give the term its plain meaning. *See Ruth*, 966 F.3d at 652 (citation omitted).

> [A] substance, other than a controlled substance which (1) by overall dosage unit appearance, including shape, color, size, markings or lack thereof, taste, consistency, or any other identifying physical characteristic of the substance, would lead a reasonable person to believe that the substance is a controlled substance, or (2) is expressly or impliedly represented to be a controlled substance or is distributed under circumstances which would lead a reasonable person to believe that the substance is a controlled substance.

720 ILL. COMP. STAT. 570/102(y).

[5] Elion asks us to resolve this issue even if we hold for other reasons that he is not a career offender. He argues that an answer to this question will aid the district court's evaluation of deficient performance on remand. We decline to do so. On remand, the district court will examine the performance prong in the first instance. The potential mismatch between counterfeit and look-alike substance may, but need not necessarily, factor into that analysis.

Dictionary entries are often helpful for that exercise. Indeed, when searching for the plain meaning of counterfeit in *Hudson*, this court referenced a dictionary entry that defined counterfeit as "made in imitation of something else with intent to deceive; forged." 618 F.3d at 703 (quoting *Counterfeit*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 285 (11th ed. 2005)). The Eighth Circuit took a comparable approach in *United States v. Robertson*, 474 F.3d 538 (8th Cir. 2007), while examining the same two terms now at issue—look-alike substance and counterfeit substance. Also relying on dictionary entries, that court held that the term counterfeit substance contains an intent component. *Id.* at 541. Given *Hudson* and *Robertson*, we understand why Elion and the district court identify an intent requirement in the term counterfeit substance.

Still, the issue is complex. Dictionary entries vary in the meaning they ascribe to counterfeit, with some—but not all—suggesting intentional deception is part of the plain meaning of counterfeit. *Compare Counterfeit*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 285 (defining counterfeit as "made in imitation of something else with intent to deceive"), *with Counterfeit*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 519 (1986) (defining counterfeit as "spurious; not genuine or authentic"). As such, in the future the plain meaning of counterfeit substance warrants careful consideration, especially because the definition of the term likely impacts the scope of Guideline § 4B1.1(a)'s applicability. But the issue is not dispositive here, so we need not resolve it. Elion prevails for an unrelated reason, which we turn to next.

## C

Beyond differing terminology, Elion also argues that the elements of the Illinois look-alike statute punish conduct more broadly than does the Guidelines controlled substance offense. Recall that the look-alike statute makes it "unlawful for any person knowingly to manufacture, distribute, *advertise*, or possess with intent to manufacture or distribute a look-alike substance." 720 ILL. COMP. STAT. 507/404(b) (emphasis added). By comparison, a controlled substance offense is "an offense … that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance)" or possession with intent to do the same. U.S.S.G. § 4B1.2(b). Juxtaposing those provisions reveals an outlier—Illinois punishes advertisement while the controlled substance offense does not.

The government disagrees. It argues that a defendant cannot violate the look-alike statute by merely marketing an illegal substance; instead, he must offer the substance for sale *and* intend to sell or distribute the substance. That additional intent to sell requirement, says the government, makes "advertise" synonymous with attempted distribution. The controlled substance offense covers attempted distribution so, in the government's view, there is no categorical mismatch. *See* U.S.S.G. § 4B1.2; *id.* at cmt. n.1 (establishing that controlled substance offense includes attempt). The government cites *United States v. Thomas*, 886 F.3d 1274, 1276 (8th Cir. 2018), and other out-of-circuit case law in support of this position. *See id.* (explaining that "a state law must require something more than a mere offer to sell," such as a "bona fide offer showing intent" for it to qualify as a controlled substance offense).

To test the government's thesis, we start with the term advertise, which Illinois defines as "the attempt, by publication, dissemination, solicitation or circulation, to induce directly or indirectly any person to acquire, or enter into an obligation to acquire, any substance within the scope of this Section." 720 ILL. COMP. STAT. 570/404(a)(1). That definition uses the verb "induce"—not "distribute" or "sell." And, contrary to the government's argument that "[i]nducing a person to acquire is just a longer way of saying 'sell' or distribute," those words as used by Illinois have different meanings. Comparing the terms "distribute" and "induce" shows this.

For purposes of the look-alike statute, Illinois defines "distribute" as "the actual, constructive or attempted transfer of possession of a controlled substance." 720 ILL. COMP. STAT. 570/102(h), (r). "Induce" lacks a statutory definition, but its plain meaning is different than the definition assigned to distribute. An individual can "by publication, dissemination, solicitation or circulation," induce another to acquire a substance without ever personally attempting to transfer possession of that substance, as the definition of distribute requires. 720 ILL. COMP. STAT. 570/404(a)(1); *see also Induce*, OXFORD ENGLISH DICTIONARY (2d ed. 1989) ("To lead (a person), by persuasion or some influence or motive that acts upon the will, to … some action, condition, belief, etc."). As such, the government's contention that an advertising offense necessarily involves the advertiser attempting to distribute or sell the substance he is advertising lacks textual support.

The government directs us to *People v. American Daily Publishing Co.*, 481 N.E.2d 859, 860 (Ill. App. Ct. 1985). There, a defendant newspaper published "an advertisement for diet pills placed by a third party." *Id.* The State charged the

newspaper with "having knowingly advertised" the diet
pills, a look-alike substance. *Id.* The trial court dismissed the
information, and the state appellate court affirmed. *Id.* On ap-
peal, the court concluded that advertising and publishing are
distinct activities with different meanings. *Id.* at 860–61. One
can publish content without inducing another to acquire a
look-alike substance and, as the court explained, the newspa-
per also "had no pecuniary interest in the sale of the pills." *Id.*
at 861. It had "no supplies from which to fill orders and it was
not a conduit for the sale of the pills." *Id.*

The government reads *American Daily Publishing* as con-
firming that an individual cannot be convicted of advertising
under the look-alike statute unless he intends to sell an illegal
substance. For the government, it was the publishing newspa-
per's lack of intent to sell that insulated it from liability. We
see it differently. The state court in that case did not hold that
an individual only advertises a look-alike substance if he in-
tends to sell or distribute that substance. Rather, the court
more narrowly concluded that "publishing" is a distinct
action from "advertising." *Id.* at 860–61. The defendant news-
paper may have published the advertisement at issue but, in
doing so, it "did nothing of its own volition to *induce* anyone
to buy the pills." *Id.* at 861 (emphasis added). To emphasize
this point, the court explained that the newspaper had no
stake in the diet pills, no role in filling orders, and no business
relationship with the advertiser apart from the advertisement.
*Id.* At no point, though, did the court ascribe an "attempted
distribution" or "intended sale" requirement into the statute.
Nor did the court suggest that "induce" is synonymous with
distribute or sell.

To read the Illinois look-alike statute as the government urges would also render language in the statute superfluous. Namely, Illinois already criminalizes attempt in 720 ILL. COMP. STAT. 5/8-4, and the look-alike statute already criminalizes distribution. 720 ILL. COMP. STAT. 570/404(b). So, even if the term advertise were excised from the statute, attempted distribution of a look-alike substance is still a crime. The government tries to counter this point by arguing for "belt and suspenders" drafting—they suggest Illinois added the redundant term advertise to match the statute's preamble and to clarify that the statute addresses a particular concern. We are not persuaded. Advertise is an independent word in the statute, and its definition uses the term induce, not sell or distribute. Given this, we decline to read advertise as merely restating, in narrower terms, what other statutory language already covers.

For these reasons, the look-alike statute's inclusion of advertise means it punishes a broader range of conduct than the Guidelines controlled substance offense. Unless the statute is divisible, Elion cannot qualify as a career offender.

### III

### A

Because the Illinois look-alike statute covers more conduct than the Guidelines controlled substance offense, we must examine whether the statute is divisible. *Ruth*, 966 F.3d at 648–49. If it is, then we may turn to the modified categorical approach to discern Elion's particular offense of conviction. *Id.*

A criminal statute that can be violated in more than one way is sometimes phrased with alternatives. When scrutinizing an alternatively phrased statute, such as the Illinois look-

alike statute, our first task is "to determine whether its listed items are elements or means." *Mathis*, 579 U.S. at 517. "Elements are the constituent parts of a crime's legal definition— the things the prosecution must prove to sustain a conviction." *Id.* at 504 (cleaned up). By comparison, factual means "are 'circumstances' or 'events' that need not be specifically proven." *Parzych v. Garland*, 2 F.4th 1013, 1017 (7th Cir. 2021) (citing *Mathis*, 579 U.S. at 504).

The Supreme Court in *Mathis* set a roadmap for discerning between elements and means. 579 U.S. at 517. We start by checking if a state court decision answers the divisibility question. If the state's highest court has previously ruled on the divisibility of the relevant statute, then we simply apply that decision. *Id.* at 517–18. We have also held that "reliance on a state intermediate court decision is appropriate in the absence of a decision from the State's highest court or a compelling reason to think the highest court would disagree with the intermediate decision." *United States v. Garcia*, 948 F.3d 789, 793 (7th Cir. 2020).

But when no state court decision answers the divisibility question, we turn to the statute itself. *Mathis* identifies two textual clues as dispositive. *Mathis*, 579 U.S. at 518. "[A] statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.* And "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Id.*; *see Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Statutes that merely identify "illustrative examples," by contrast, recite means of commission, not elements. *Mathis*, 579 U.S. at 518 (quoting *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)).

If neither the state's highest court nor the statute's text resolve divisibility, "federal judges have another place to look: the record of a prior conviction itself." *Id.* At this step, we peek at the record documents, such as the indictment and "correlative jury instructions" for the limited purpose of discerning between elements and means. *Id.* at 518–19. Our focus remains on the divisibility of the statute, and "review of the record is truly *limited* because if by peering into the record the sentencing court learns that the listed items are means, the court must cease further consideration of the record and return to strictly applying the categorical approach." *Smith*, 921 F.3d at 713 (citing *Mathis*, 579 U.S. at 518–19).

If, using these tools, we conclude the Illinois look-alike statute is divisible, then we can deploy the modified categorical approach. *Mathis*, 579 U.S. at 517. Essentially, the modified categorical approach allows us to discern which of a statute's divisible offenses the defendant was convicted of committing. To apply the modified categorical approach, we "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of." *Id.* at 505–06. We "then compare that crime, as the categorical approach commands, with the relevant" Guidelines offense. *Id.* at 506.

Elion argues the Illinois look-alike statute is indivisible. For him, "section 404(b)'s 'manufacture, distribute, advertise, or possess with intent' are best read as indivisible means of committing a single offense, not divisible elements of distinct offenses." The government sees it differently. Relying mainly on Elion's record of conviction, the government asserts that

the look-alike statute lists elements in the alternative and is divisible.

**B**

The Illinois Supreme Court has not resolved the divisibility of the look-alike statute, so we turn to intermediate state appellate court decisions. Elion rightly identifies that some of those decisions refer to look-alike statute convictions as convictions for "manufacturing or delivering" a lookalike substance. *See, e.g.*, *People v. Moore*, 2016 IL App (2d) 140614-U, ¶ 5; *In re Tajannah O.*, 8 N.E.3d 1258, 1261 (Ill. App. Ct. 2014). Those "passing references," says Elion, show that the Illinois statute recites alternative means, not elements.

While we agree that those decisions hint at indivisibility, they are not dispositive. As Elion concedes, the cited cases mention "manufacture or delivery" only in passing and do not directly opine on whether the look-alike statute is divisible. We decline to put too much weight on language that does not squarely address the relevant issue, especially when most of those decisions are unpublished. *See Najera-Rodriguez v. Barr*, 926 F.3d 343, 355 (7th Cir. 2019) (quoting *Mathis*, 519 U.S. at 517) ("*Mathis* directs us to look for a 'state court decision that definitively answers the question' … not to construct our own patchwork theory of state statutory elements through a pastiche of dicta in cases that do not address the issue directly.").

**C**

Given the lack of dispositive state case law, we must turn to the look-alike statute's text. *Mathis*, 579 U.S. at 518. The different components of the Illinois look-alike statute all share one punishment, 720 ILL. COMP. STAT. 570/404(b), so we

cannot resolve divisibility on that basis. *Mathis*, 579 U.S. at 518. The statute also does not "identify which things must be charged … and which need not be." *Id.* So, the two dispositive clues for divisibility are not present. That means we must scrutinize the look-alike statute more broadly. *See Najera-Rodriguez*, 926 F.3d at 350–52 (examining "text and structure").

Both parties identify textual evidence as supporting their preferred positions. But before we consider those arguments, we recall the relevant portion of the look-alike statute: "It is unlawful for any person knowingly to manufacture, distribute, advertise, or possess with intent to manufacture or distribute a look-alike substance. Any person who violates this subsection (b) shall be guilty of a Class 3 felony, the fine for which shall not exceed $150,000." 720 ILL. COMP. STAT. 570/404(b). Looking to that text, Elion highlights the singular article "a" used in the phrase "a Class 3 felony." For Elion, that means the different verbs all culminate in a single, indivisible crime. Yet, as the government points out, the statute's construction cuts both ways. The look-alike statute lists the different components in the disjunctive, so it would make sense for the second sentence to use a singular "a" whether the preceding list identifies elements or means. Given the viability of both readings, the statute's text and structure do not resolve the question of divisibility.

Viewing things more broadly, both parties ask us to compare the Illinois look-alike statute to similar federal or state statutes. Elion offers Illinois's first-degree murder statute, 720 ILL. COMP. STAT. 5/9-1(a), Illinois's theft statute, 720 ILL. COMP. STAT. 5/16-1(a), and part of the Federal Controlled Substances Act, 21 U.S.C. § 841(a)(1), which have all been held indivisible. *See People v. Cooper*, 743 N.E.2d 32, 39 (Ill. 2000) (citation

omitted) (murder); *People v. Price*, 850 N.E.2d 199, 203 (Ill. 2006) (citation omitted) (theft); *United States v. Orzechowski*, 547 F.2d 978, 986–87 (7th Cir. 1976) (§ 841(a)(1)). The government musters its own examples, including an Eighth Circuit case, *United States v. Maldonado*, which concluded divisibility for Nebraska and Iowa statutes. 864 F.3d 893, 898 (8th Cir. 2017).

We acknowledge that several of the cited statutes—especially 21 U.S.C. § 841(a)(1)—resemble the structure of the look-alike statute. But this back and forth ultimately does not resolve the divisibility question. In *Mathis* and related decisions, the Supreme Court outlined the proper sources for determining divisibility. 579 U.S. at 517–19. That framework does not endorse comparing unrelated state and federal statutes to conclusively discern divisibility. Comparing statutes may have analytical value, but we are reluctant to resolve the case on that basis alone. Many statutes undergo divisibility analysis, and parties will often be able to identify statutes that support their preferred conclusion. Still, we are not without options to break the stalemate. Where "state law fails to provide clear answers," the Court allows reference to "the record of a prior conviction" to determine divisibility. *Id.* at 518. We turn to those documents now.

**D**

We start with Elion's record of conviction documents, including the information, indictment, and judgment, before turning to the applicable jury instruction. Elion's information charged him with "unlawful delivery of a look-alike substance." The grand jury indictment and judgment reflect the same offense: "[U]nlawful delivery of a look-alike substance." While those documents suggest Elion was charged with—and

convicted of—distributing a look-alike substance, they do not plainly say so. Each document uses the word "delivery," which is not included in the look-alike statute. To be sure, the statutory definition of delivery closely aligns with distribution. Illinois defines "delivery" as "the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship." 720 ILL. COMP. STAT. 570/102(h). And the same statute defines "distribute" as "to deliver, other than by administering or dispensing, a controlled substance." 720 ILL. COMP. STAT. 570/120(r). Nonetheless, there is a gap between the term used in Elion's record documents and the term used in the look-alike statute. We do not know whether the documents use "delivery" in its definitional sense or as a general reference to the look-alike statute.

The government suggests *United States v. Redden* speaks to this question. 875 F.3d 374, 375 (7th Cir. 2017). There, we examined 720 ILL. COMP. STAT. 570/401 to determine if it criminalized conduct more broadly than the Guidelines controlled substance offense. *Id.* at 374–75. We held it did not, concluding that "[a]ny conduct meeting the state's definition of 'delivery' comes within § 4B1.2(b)." *Id.* at 375. While true enough, we fail to see the relevance of that determination. The issue here is whether the use of delivery in Elion's record documents means the look-alike statute is divisible. On that critical point, *Redden* offers no guidance. So, we turn next to the applicable jury instruction.

In full, Illinois Criminal Pattern Jury Instruction 17.34 reads:

> To sustain the charge of [ (manufacture of) (distribution of) (advertisement of) (possession of)

(possession with intent to manufacture) (possession with intent to distribute) ] a look-alike substance, the State must prove the following proposition:

That the defendant knowingly [ (manufactured) (distributed) (advertised) (possessed) (possessed with intent to manufacture) (possessed with intent to distribute) ] a look-alike substance.

If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

Illinois Pattern Jury Instructions—Criminal, 17.34. The Committee Notes provide additional detail on using the cited instruction. They explain that the instructing court should "[u]se applicable bracketed material," and that "[s]eparate issues and definitional instructions may have to be given, along with separate verdict forms, if the jury is to consider more than one charge under Section 570/404." *Id.* at cmt. n.1. Like Elion's record of conviction documents, the jury instruction is subject to competing interpretations. It is unclear whether the bracketed segment can permissibly contain multiple parenthetical components—which would mean indivisibility—or if it may contain only one component to the exclusion of others.

Ultimately, our prior decision in *Parzych v. Garland* guides how we interpret the record documents and jury instruction. 2 F.4th 1013. There, we examined the divisibility of Illinois's burglary statute, 720 ILL. COMP. STAT. 5/19-1(a), which states that an individual commits burglary when without authority he "knowingly enters or without authority remains" in certain buildings or vehicles, "with intent to commit therein a felony or theft." *Parzych*, 2 F.4th at 1015, 1017. The question in *Parzych* was whether the two types of intent listed in the statute—intent to commit "a felony" or intent to commit "theft"—qualified as means or elements. *Id.* at 1017.

As here, the divisibility analysis in *Parzych* led us to examine the underlying record of conviction. Parzych's indictments showed that he was charged with "unlawful entry *with intent to commit theft*." *Id.* at 1019 (emphasis added) So, like Elion's charging documents, those documents included one component of the statute (intent to commit theft) and left others out (intent to commit a felony). While at a high level that suggests divisibility, we cautioned in *Parzych* that charging documents must be used with care. Such documents "regularly include factual details that are not elements of the crime, so the indictment's inclusion of intent to commit theft—without more—[did] not show that it is an element." *Id.* The same is true here with Elion's record documents. We cannot conclusively determine whether their inclusion of "delivery" was intended to describe the look-alike statute generally or meant to identify "distribute" as an element.

We also examined the Illinois jury instructions. In *Parzych*, the relevant instructions "direct[ed] jurors to decide whether a defendant unlawfully entered a property 'with intent to commit therein the offense of ___.'" *Id.* (quoting Illinois

Pattern Jury Instructions—Criminal 14.07–.10). The instruc-
tion thus left the intent component open-ended, with the
Committee Notes "direct[ing] that an 'offense alleged in the
charge' be identified on the blank line before providing the
instructions to the jury." *Id.* On our review, we concluded that
"neither the blank line nor the committee's notes require a sin-
gle form of intent to be inserted, nor do they clarify whether
multiple offenses could be added, if alleged." *Id.* Accordingly,
"the jury instructions d[id] not suggest that the information
to be inserted [was] a single element of the crime." *Id.* Given
all that, the record documents and jury instructions did not
conclusively establish divisibility.

Here, Elion's jury instruction is similarly—if not more—
ambiguous than the one in *Parzych*. As noted, we cannot con-
clusively determine whether multiple bracketed components
may be included in the jury instruction. This means the record
documents do not "speak plainly," and we cannot satisfy
"*Taylor*'s demand for certainty" that Elion was convicted of a
controlled substance offense. *Mathis*, 579 U.S. at 519 (quoting
*Shepard*, 544 U.S. at 21). The Illinois look-alike statute is over-
broad and indivisible, so Elion's convictions do not qualify as
predicate offenses.[6]

Our holding also accords with the warning we gave in
*Najera-Rodriguez*, 926 F.3d at 356. There, we explained the risk

---

[6] We understand this holding conflicts with two of our unpublished
orders, *United States v. Phenegar*, 809 F. App'x 323, 324–25 (7th Cir. 2020),
and *United States v. Green*, 458 F. App'x 568, 568–69 (7th Cir. 2012). But
those orders, responding to *Anders* briefs, did not benefit from the detailed
arguments and analysis now before us. In any event, we do not defer to
non-precedential dispositions. *United States v. Prado*, 41 F.4th 951, 953 n.1
(7th Cir. 2022); *see also* Circuit Rule 32.1.

involved when federal courts interpret state statutes through the categorical approach: "If federal courts interpret state law incorrectly, by finding that state laws include essential elements that state courts have not treated as such, we could mistakenly cast doubt on the much higher volume of state criminal prosecutions under those same state statutes." *Id.* So, "[t]o reduce that risk," we insist on clear signals, "signals that convince us to a certainty that the elements are correct and support divisibility before imposing additional federal consequences for those state convictions." *Id.* Simply put, those clear signals are absent here.

Before ending, we acknowledge that our decision "elevates the abstract and artificial categorical approach over the known facts of the case." *Bridges*, 991 F.3d at 810. At a certain level of abstraction, the match between Illinois's look-alike statute and the Guidelines controlled substance offense seems obvious—the statute and the Guideline both deal with phony drugs. It is also plausible that Elion distributed a look-alike substance instead of advertising one. But the categorical approach requires diligent adherence to a rigid framework. Indeed, the Court has told us time and again that we may not consider the facts of the defendant's conduct, no matter how apparent. *Descamps*, 570 U.S. at 261. That precedent binds us. So, adhering to the categorical approach, we hold that Elion's 1999 and 2000 Illinois offenses cannot qualify as controlled substance offenses.

It follows that Elion suffered prejudice from counsel's failure to object. He should have been sentenced under a lower Guidelines range, and there is no indication the sentencing court would have imposed the same sentence regardless of § 4B1.1(a)'s applicability. *See Bridges*, 991 F.3d at 808 (quoting

*Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016)) ("In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome."). Had counsel objected to the career offender Guideline, there is a reasonable probability that Elion's sentence would have been lower.

**IV**

The district court determined that Elion was properly sentenced as a career offender and, therefore, could not show prejudice for his *Strickland* claim. But the Illinois look-alike statute punishes conduct more broadly than the Guidelines controlled substance offense, and it is indivisible. As such, Elion's prior Illinois convictions do not qualify as Guideline § 4B1.1(a) predicate offenses, and he should not have been sentenced as a career offender. We REVERSE the denial of Elion's § 2255 motion and REMAND so the district court may examine *Strickland*'s deficient performance prong in the first instance. Though we leave consideration of counsel's performance to the sound discretion of the district court, our decision in *Bridges v. United States* may provide helpful direction on remand. 991 F.3d at 802–06.