RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

TERRANCE C. KIMBROUGH,

>    *Petitioner-Appellant*,

>    *v.*                                                                No. 21-6208

>    UNITED STATES OF AMERICA,

>    *Respondent-Appellee*.

─────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
Nos. 3:15-cr-00147-7; 3:16-cr-00142-3; 3:19-cv-01006;
Waverly D. Crenshaw, Jr., Chief District Judge.

Argued: June 14, 2023

Decided and Filed: June 22, 2023

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Jared M. Hirsch, NEW YORK UNIVERSITY, New York, New York, Daniel S. Harawa, WASHINGTON UNIVERSITY, St. Louis, Missouri, for Appellant. Andrew C. Noll, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Jared M. Hirsch, Pooja Goel, NEW YORK UNIVERSITY, New York, New York, Daniel S. Harawa, WASHINGTON UNIVERSITY, St. Louis, Missouri, for Appellant. Andrew C. Noll, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Monica Morrison, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

—————————

**OPINION**

—————————

SUTTON, Chief Judge. Terrance Kimbrough murdered a rival drug dealer. When he learned that a witness might cooperate with law enforcement, Kimbrough murdered him too. Federal charges followed. His lawyers negotiated a plea deal under which the government would drop many of the charges and he would serve 480 to 520 months in prison. Kimbrough agreed to the plea deal, and the district court imposed a 504-month sentence. Kimbrough had second thoughts. He moved to vacate his sentence, claiming that his counsel provided constitutionally ineffective assistance in advising him to accept the plea deal. The district court rejected this contention. So do we.

I.

Kimbrough, known as "Rampage" on the street, participated in a gang centered at the J.C. Napier public housing complex in Nashville, Tennessee. He was not an inactive member of the gang. In November 2014, soon after his 18th birthday, Kimbrough drew his gun on two rival dealers, forced them to strip, and stole their drugs and cash.

Days later, he spotted another dealer and again demanded cash and drugs. Rather than capitulate, this dealer fled. Kimbrough shot at the victim, striking him at least once.

On November 26, Kimbrough and an associate agreed to rob yet another dealer, Brendon Leggs. The pair walked up to his open car window and issued demands. When Leggs attempted to speed away, they opened fire. Leggs drove a short while further, stumbled out of his car, and collapsed to the ground. He died within hours.

Soon after, Kimbrough learned that Monte Watson had witnessed the murder and might share information with law enforcement. Kimbrough searched for Watson with an accomplice but could not find him. A week after the first murder, Kimbrough found Watson and fatally shot him with the same gun used to kill Leggs.

A new year did not bring any change in behavior. In February 2015, Kimbrough shot at an occupied car. In July, he ambushed a rival gangster and shot him in the leg. Weeks later, he started a shootout that wounded two bystanders.

Federal agents arrested Kimbrough in 2015, and twin grand juries charged him with 18 offenses. For the Brendon Leggs murder, the charges included attempted Hobbs Act robbery, 18 U.S.C. § 1951(a), and murder with a firearm during a crime of violence, *id.* § 924(j). For the Monte Watson murder, the charges included murder of a federal witness, *id.* § 1512(a)(1)(C), and murder with a firearm during a crime of violence, *id.* § 924(j).

In August 2018, Kimbrough's attorneys negotiated a plea deal. Under it, he would agree to a 12-page factual stipulation admitting his crimes, and he would plead guilty to seven charges, including two counts of murder with a firearm during a crime of violence for the Leggs and Watson murders. In exchange, the government would dismiss the remaining charges and agree to a binding sentencing range of 480 to 520 months. That spared Kimbrough the mandatory life sentence carried by the dismissed murder of a federal witness charge. *Id.* §§ 1111(b), 1512(a)(1)–(3)(A). Kimbrough agreed to the deal, and the district court imposed concurrent 504-month sentences on the two § 924(j) convictions (and concurrent statutory maximum sentences on the other counts). He did not appeal.

In November 2019, Kimbrough moved to vacate his sentence. *See* 28 U.S.C. § 2255. He advanced the claim, among other arguments, that his attorneys provided ineffective assistance by advising him to plead guilty to murdering Leggs with a firearm during a crime of violence. *See* 18 U.S.C. § 924(j). That was so, he said, because the predicate offense—attempted Hobbs Act robbery—did not amount to a "crime of violence." *Id.* § 924(c)(3)(A). In 2021, the district court agreed with Kimbrough that attempted Hobbs Act robbery fails to qualify as a predicate offense. But it nevertheless rejected Kimbrough's claim. In the absence of evidence that he would have rejected the plea and insisted on a trial with better counsel, the court reasoned, Kimbrough could not demonstrate prejudice from any error.

After Kimbrough filed his notice of appeal, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence. *United States v. Taylor*, 142 S. Ct. 2015,

2021–22 (2022).   In light of *Taylor*, we issued a certificate of appealability limited to the ineffective assistance claim.  *Kimbrough v. United States*, No. 21-6208 (6th Cir. June 29, 2022).

## II.

To establish ineffective assistance of counsel, Kimbrough must show that his attorney performed deficiently and that he suffered prejudice from the inadequate representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  He cannot do either.

*Deficient performance.*  Establishing deficient performance—unconstitutionally deficient performance—requires showing that an attorney made errors "so serious" he did not "function[] as the 'counsel' guaranteed . . . by the Sixth Amendment."  *Id.*  To "eliminate the distorting effects of hindsight," we must adopt "counsel's perspective at the time," and "indulge a strong presumption that" counsel performed reasonably.  *Id.* at 689.  For this reason, "counsel is not ineffective for failing to predict the development of the law," and subsequent legal developments are relevant only if "clearly foreshadowed by existing decisions."  *Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010).  Even clearly foreshadowed arguments, moreover, need not be pursued in the face of a favorable plea.  *Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996).

When Kimbrough pleaded guilty, existing precedent did not "clearly foreshadow" *Taylor*. Because the Sixth Amendment protects against only the most egregious of omissions, precedent will "clearly foreshadow" a change in law in "rare" circumstances.  *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999).  The change must be so obvious that no "reasonable" jurist or attorney could fail to foresee it.  *See Chase v. MaCauley*, 971 F.3d 582, 593–94 (6th Cir. 2020).

But the change was hardly obvious here.  Recall the long windup to *Taylor*.  In 1984, Congress provided two "crime of violence" definitions:  the elements clause and the residual clause.  18 U.S.C. § 924(c)(3).  In 2015 and 2018, before Kimbrough's plea, the Supreme Court refused to enforce two similarly worded residual clauses in other statutes on the grounds that they were unconstitutionally vague.  *See Johnson v. United States*, 576 U.S. 591, 606 (2015); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018).  In 2019, after Kimbrough's plea, the Court did the same for the § 924(j) residual clause.  *United States v. Davis*, 139 S. Ct. 2319, 2336

(2019). That left the elements clause definition: "an offense that . . . has as an element the use, *attempted use*, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A) (emphasis added).

After *Johnson*, a few defendants raised challenges to attempted Hobbs Act robbery's status as a crime of violence under the elements clause. As Kimbrough concedes, however, not a single court had accepted this argument prior to his guilty plea. *See, e.g.*, *United States v. St. Hubert*, 883 F.3d 1319, 1333 (11th Cir. 2018), *superseded by* 909 F.3d 335 (11th Cir. 2018) ("[A]ttempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s [elements] clause because that clause expressly includes '*attempted* use' of force."). Generally, counsel performs reasonably by hewing to one side of a split in the face of "uncertainty in the caselaw." *Bullard v. United States*, 937 F.3d 654, 663 (6th Cir. 2019); *see also Benning v. Warden*, 345 F. App'x 149, 157 (6th Cir. 2009); *Lucas*, 179 F.3d at 420. That conclusion holds doubly true here, where there was no split and no case law favorable to Kimbrough. What's more, after Kimbrough pleaded guilty, four more circuits reached the same conclusion. *See, e.g.*, *United States v. Ingram*, 947 F.3d 1021, 1025–26 (7th Cir. 2020); *United States v. Dominguez*, 954 F.3d 1251, 1255 (9th Cir. 2020); *United States v. Smith*, 957 F.3d 590, 596 (5th Cir. 2020); *United States v. Walker*, 990 F.3d 316, 330 (3d Cir. 2021).

Not until October 2020, more than two years after Kimbrough pleaded guilty, did a single circuit embrace his approach. *See United States v. Taylor*, 979 F.3d 203, 205 (4th Cir. 2020). And not until four years after Kimbrough's plea did the Supreme Court do the same. *Taylor*, 142 S. Ct. at 2021. If *Taylor* was "clearly foreshadowed," we have a good many attorneys who failed to see the writing on the wall. *Thompson*, 598 F.3d at 288. And a good many judges who did the same. But in reality the Sixth Amendment guarantees a competent attorney, not a clairvoyant one.

Even if *Taylor* was clearly foreshadowed, that does not end the inquiry. Counsel does not perform deficiently by foregoing a potentially meritorious argument to secure a favorable plea. *Nagi*, 90 F.3d at 135; *see also Premo v. Moore*, 562 U.S. 115, 126–27 (2011) (counsel did not err in trading away a suppression argument in favor of an early plea). Else, every guilty plea would become a "*conditional* plea, with the (unstated) condition that the defendant obtains the

benefit of favorable legal developments, while the prosecutor is stuck with the original bargain." *United States v. Bradley*, 400 F.3d 459, 464–65 (6th Cir. 2005) (quotation omitted).

With or without the *Taylor* argument, Kimbrough did not have a strong hand to play in plea negotiations. Consider the factual admissions over 12 pages, none of which he denies to this day. Add to that the mandatory life sentence carried by the murder of a federal witness charge. Take too his failure to identify any viable defense to that charge. Counsel, all in all, did not have much to work with. Nor would the *Taylor* argument have materially altered this reality. Given the lack of a single favorable decision at the time, the district court may not have accepted it. Even if the court had done so, "[i]t is not clear how the successful exclusion of" one of 18 charges would have materially improved Kimbrough's bargaining position. *Premo*, 562 U.S. at 126. Yet despite this minimal leverage, Kimbrough's counsel secured a plea with a 480-to-520-month sentence—a lengthy term, granted, but one that (with good time credit) permits Kimbrough's release in his mid-to-late 50s, a meaningful improvement over a guaranteed life sentence. *See Shimel v. Warren*, 838 F.3d 685, 698–99 (6th Cir. 2016) (emphasizing the distinction between a long sentence and a life sentence); 18 U.S.C. § 3624(b). No unconstitutionally deficient performance occurred.

Kimbrough counters that the *Taylor* argument "was at the very least . . . viable," requiring counsel to raise it. Reply Br. 7. But counsel must only consider "clearly foreshadowed" arguments, not every "viable" one. *Thompson*, 598 F.3d at 288; *see also Nagi*, 90 F.3d at 135.

Nor does *Chase v. MaCauley* help Kimbrough. 971 F.3d at 582. There, the Supreme Court had already ruled on the dispositive issue, so "no prediction was necessary." *Id.* at 593.

*Prejudice.* Kimbrough also fails to show prejudice for many of the same reasons. After a guilty plea, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In some settings, we have suggested that a petitioner can establish prejudice based on a lesser showing: a reasonable probability of "a more favorable plea." *Gilbert v. United States*, 64 F.4th 763, 771 (6th Cir. 2023). Either way, we have generally

engaged in an "objective" rather than a "subjective" inquiry, one that requires the petitioner to demonstrate that "reject[ing] the plea bargain would have been rational under the circumstances." *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).  Kimbrough comes up short under either approach.

Start with the likelihood of a trial.  Kimbrough to this day does not claim innocence or offer a "realistic defense" that would have led him to take his chances before a jury.  *Lee v. United States*, 582 U.S. 357, 366 (2017).  Nor does he offer any other compelling reason why he would have "rejected [a] plea . . . in favor of throwing a 'Hail Mary' at trial."  *Id.* at 367–68.  Even now, he does not claim that he would have rejected the plea and opted for trial.  The best he can say is that, by filing pretrial motions, he was "prepared" and "ready" for trial.  Appellant's Br. 26; Reply Br. 11–12.  But the reality that Kimbrough *could* have gone to trial falls short of showing that he *would* have gone to trial and risked a likely life sentence.  *See Shimel*, 838 F.3d at 698–99 (rejecting prejudice argument based on the life sentence defendant faced at trial).

Turn to the probability of a better deal.  Kimbrough's plea deal provided for a favorable sentencing range in the face of long trial odds.  Even success on the *Taylor* argument would have done little to undermine the government's multi-count leverage.  Not just the extensive number of charges affects the inquiry, moreover; so too does the considerable strength of the evidence and, looming over it all, the daunting and vivid threat of a mandatory life sentence.  Kimbrough fails to identify a legal argument that materially mitigates the risk of a mandatory life sentence or a factual argument that materially improves the odds of an acquittal.  Without more, he cannot show that knocking out a single § 924(j) charge would have led the government to offer a deal better than the one he accepted.

Unable to demonstrate prejudice under *Strickland*'s "reasonable probability of a different result" standard, Kimbrough persists that the contested § 924(j) charge "infected" the plea process.  Appellant's Br. 4, 14, 26–27.  But to repeat, that isn't the standard.  Even taken on its own terms, the argument does not work.  No evidence shows that this one charge dominated the plea negotiations.  And lots of evidence shows that Kimbrough committed serial murders and extreme violence, making it highly unlikely that the negotiations would turn on, or be materially affected by, a § 924(j) charge.  The plea agreement based the binding sentencing range on "the

seriousness of [Kimbrough]'s overall conduct," not on individual charges or even on "the Sentencing Guidelines."  R.410 at 14 (M.D. Tenn. No. 3:16-cr-142-3).

Kimbrough contends that *United States v. McKinney* mandates a more lenient prejudice standard focused only on whether he would "have pled guilty to the count of conviction."  60 F.4th 188, 196 (4th Cir. 2023).  But that out-of-circuit case analyzed prejudice for purposes of procedural default, not ineffective assistance.  *Id.* at 193, 196.  What's more, the dissent raised compelling doubts about whether the majority even got *that* prejudice standard right.  *Id.* at 201–02 (Wilkinson, J., dissenting).

At the very least, Kimbrough claims, his counsel should have advised him to plead guilty while preserving his right to challenge the § 924(j) conviction on appeal.  But the plea agreement included a broad appellate waiver, and Kimbrough offers no reason why the government would have agreed to forgo it.  *See Bradley*, 400 F.3d at 464–65 (describing the value to both parties of appellate waivers).

*Request to expand the certificate of appealability.*  One wrinkle remains.  In his reply brief, Kimbrough requests that we expand the certificate of appealability beyond his ineffective assistance claim to permit a direct challenge to the § 924(j) conviction.  But this request comes too late and falters on its own terms.

Kimbrough forfeited the claim as an initial matter.  He concedes that he procedurally defaulted the *Taylor* argument by failing to pursue it in the trial court and on direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).  Overcoming this default requires showing either "cause" and "prejudice" or "actual innocence."  *Id.* at 622–23.  Kimbrough raises—for the first time in his reply brief—"novel[ty]" and "actual innocence" as grounds for overcoming his default.  Reply Br. 18–19, 22–24.  By failing to raise the substantive challenge (or his newly asserted grounds for overcoming procedural default) below *or* in his opening brief, Kimbrough doubly forfeited review.  *United States v. Mullet*, 822 F.3d 842, 848 (6th Cir. 2016); *see also Strong v. Nagy*, 825 F. App'x 239, 243 (6th Cir. 2020) (applying forfeiture to attempts to overcome procedural default).

In addition, Kimbrough's attempts at overcoming the default fall apart on the merits. He cannot show that the *Taylor* argument was sufficiently "novel" to constitute "cause" because it had been previously raised by "another litigant." *Gatewood v. United States*, 979 F.3d 391, 395 (6th Cir. 2020) (quotation omitted). Nor can he establish "actual innocence," which requires demonstrating factual innocence of all "more serious charges" dismissed "in the course of plea bargaining." *Bousley*, 523 U.S. at 624. Kimbrough admitted to murdering a federal witness, which as noted carries a mandatory life sentence. That forecloses any contention he is "actually innocent." *See Peveler v. United States*, 269 F.3d 693, 700 (6th Cir. 2001).

We affirm.